J-S24001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.J.M.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.S.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 547 WDA 2021 |

Appeal from the Order Entered April 8, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 2020-630 IVT

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED: SEPTEMBER 27, 2021**

B.S.W. ("Father") appeals from the Order entered on April 8, 2021, by the Court of Common Pleas of Cambria County, which involuntarily terminated his parental rights with respect to his child, R.J.M.W. ("Child"), born in April 2016.[1]  Because the record supports the decision of the Orphan's Court, we affirm the Order.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the Orphans' Court's findings of fact contained in the Order on appeal, and from the certified

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Order also involuntarily terminated the parental rights of Child's mother, V.J.M.F. ("Mother").  Mother appealed the termination of her rights at Superior Court docket number 561 WDA 2021.  We address her appeal in a separate memorandum.

record. In July 2016, when Child was three months old, Mother and Father were arrested for possession of illegal substances and endangering the welfare of Child. Blair County Children Youth and Families Agency ("Agency") obtained emergency protective custody, and the Blair County dependency court adjudicated Child dependent. The Agency placed Child in kinship care with Paternal Grandmother. In June 2017, Mother and Father moved into Paternal Grandmother's home and Child returned to their care because they had both met their family service plan goals, including participation in drug addiction therapies. Court supervision ended July 2017.

However, one month later, Paternal Grandmother called the local police department and asked for Child to be removed because Mother and Father had relapsed and she feared for Child's safety. Police officers found marijuana and drug paraphernalia, including needles and spoons with residue, in the home. Mother was arrested for probation violations; Father's whereabouts were unknown. The court again adjudicated Child dependent; the Agency placed Child with Maternal Grandmother in Cambria County.[2]

_____

[2] Upon Mother's release from prison in November 2017, she, too, lived with Maternal Grandmother. However, over the next several years, Mother struggled with her drug addiction and mental health issues which resulted in homelessness, financial difficulties, and criminal activity resulting in her incarceration at the time of the termination hearing. Due to Maternal Grandmother's need to care for her ill husband, Child was placed in kinship care with Mother's sister until the summer of 2020. Cambria County CYS then placed Child with a pre-adoptive foster family.

In October 2017, Father pled guilty to firearms offenses that had been charged after a stand-off with police officers. He received an aggregate sentence of three and one-half to ten years' incarceration. Following Child's adjudication of dependency, the juvenile court ordered Father to complete a series of goals, which included maintaining a residence for at least six months, obtaining a psychological evaluation and substance abuse assessment, avoiding substance abuse, completing parenting classes, and avoiding conflicts with the law.

Following a hearing, on June 24, 2020, the juvenile court entered an Order changing Child's permanent placement goal to adoption after finding neither parent had complied with their placement plans.

On August 24, 2020, CYS filed a Petition to terminate the parental rights of Mother and Father involuntarily. The Orphans' Court conducted a hearing on the Petition on March 15, 2021, at which time Child was nearly five years old.[3] Both Mother and Father were incarcerated at the time; each was represented by counsel. CYS presented testimony from CYS caseworker, Chloe Barret; CYS casework supervisor, May Popovich; JusticeWorks family resource specialist, Brenda Hoover; psychologist, Dennis Kashurba; substance abuse

_____

[3] Suzann Lehmier, Esq., represented Child's legal interests and best interests during the proceedings, which the court determined were not in conflict.

counselor, Josh Lightner; and Bair Foundation visitation supervisor, Samantha Eisenhuth.

Father testified on his own behalf, stating that he had completed his substance abuse disorder program on March 5, 2021, and that he believed he would be considered for parole in May 2021. He testified that he had tried to work with CYS to have visits with Child at the prison, but due to CYS changing caseworkers and sending the wrong paperwork to the prison, he has not seen Child, even virtually, since his incarceration in October 2017. He also testified that he sent Child a Christmas present in 2019 as well as Easter and birthday cards. He stated that he planned to live with his mother upon his release and, although he does not have a job, he plans to obtain a job utilizing the trade certifications he obtained in prison. On both direct and cross-examination, Father acknowledged that he no longer has a bond with Child. He also acknowledged that he has been involved with the criminal justice system since 2004.

Paternal Grandmother testified, *inter alia*, that Father and Child could live with her when Father got out of prison and that she has been in contact with people who may be able of offer Father work.

Following the hearing, on April 8, 2021, the Orphans' Court entered an Order involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). Thereafter, Father filed timely

a Notice of Appeal and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

**ISSUES ON APPEAL**

Father raises the following issues for our review:

A. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in determining [CYS] sustained its burden of proving the termination of [Father's] parental rights is warranted under Sections 2511(a)(1), 2511(a)(2), 2511(a)(5), and/or 2511(a)(8) of the Adoption Act?

B. Even if this Court concludes [CYS] established statutory grounds for the termination of Father's parental rights, whether the [orphans' c]ourt nevertheless erred as a matter of law and/or manifestly abused its discretion in determining [CYS] sustained its additional burden of proving the termination of Father's parental rights is in the best interests of [] Child?

Father's Brief at 8 (suggested answers omitted).

**LEGAL ANALYSIS**

When reviewing a decree involuntarily terminating parental rights, this Court must accept the findings of fact and credibility determinations of the Orphans' Court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the Orphans' Court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the Orphans' Court decree even though the record could support an opposite result. *In re Adoption of Atencio,* 650 A.2d 1064, 1066 (Pa. 1994).

"The [orphans'] court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). This Court defers to the Orphans' Court, as it often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the Orphans' Court to conduct a bifurcated analysis. *See* 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), the court will then analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, pursuant to Section 2511(b). The courts must examine the existence of the child's bond with the parent, if any, and the potential

effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). As this Court has emphasized, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude the Orphans' Court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021 (quoting *In re*

*Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015)). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (quoting *In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011)).

"[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *In re Adoption of S.P.*, *supra* at 828. Courts will consider "whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited." *Id*. (quoting *In re: Adoption of McCray,* 331 A.2d 652, 655 (Pa. 1975). Thus, at a termination hearing, the Orphans' Court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the Child's dependency proceedings. *In re S.C.*, *supra* at 1105 (quoting *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010).

Here, Father contends that the Orphans' Court erred or abused its discretion by terminating his parental rights because incarceration alone is insufficient to support termination. Father's Brief at 15-17. Father also argues he was set to be paroled about two months after the termination hearing in May 2021, that he completed a substance abuse program, psychological evaluation, and various employment certifications while incarcerated, and that he had plans for employment and housing upon being paroled. *Id.* at 17-18. Father thus asserts that he has remedied, or will be able to remedy, any conditions rendering him incapable of parenting Child. *Id.* at 19.

In its findings of fact included in the Order on appeal, the Orphans' Court determined Father remained incarcerated throughout Child's dependency and had failed to comply with his permanency plan requirements. Order, 4/8/21, at 2-8. The Orphans' Court credited a "Best Interest Statement" that CYS's casework supervisor, May Popovich, and caseworker, Chloe Barrett, prepared and which the court admitted into evidence as Petitioner's Exhibit 10. *Id.* at 10-11. That Statement indicated that Father's poor choices and involvement in the criminal justice system had rendered him unable to demonstrate that he could provide appropriate care for Child "in the past, present, or in the reasonable future." *Id.* at 11 (quoting Petitioner's Exhibit 10). Although the court acknowledged that Father now understood his issues and wanted a second chance whenever he gets out of prison, it observed that Child is now five years old and has already waited long enough for her parents to make

progress. *Id*. at 11. The court also found that Father and Child have no bond and Child is bonded to her pre-adoptive foster parents and doing well in their care. *Id*. at 10.

It was within the court's discretion to conclude Child's life should not be held in abeyance any longer based on the speculative hope that Father, after many years of instability and unavailability, might be released soon from prison and will be able to provide appropriate care for her in a reasonable time. Having reviewed the record, we conclude it supports the findings of the Orphans' Court that Father has not provided Child with essential parental care, control, and subsistence necessary for her mental and physical wellbeing, and that Father is unable to remedy the causes of her parental incapacity, neglect, or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We also conclude, pursuant to Section 2511(b), that the Orphans' Court properly determined termination of Father's parental rights would be in the best interest of Child. With respect to Section 2511(b), the court must consider whether termination of parental rights would best serve the child's developmental, physical, and emotional needs and welfare. *See* 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, *supra* at 1121.

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). *Matter of Adoption of M.A.B.*, *supra* at 449

It is sufficient for the Orphans' Court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *Id.* The court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *In re N.A.M.*, *supra* at 103. Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Father avers that terminating his parental rights would not serve Child's needs and welfare and would have a detrimental impact on Child. Father's Brief at 22-23. He argues that the Orphans' Court failed to adequately consider the impact terminating his rights would have on Child, and that the record lacked the evidence necessary for the court to assess this issue. *Id.* at 23. Father also contends that he faced obstacles impeding his attempts at reunification with Child but made efforts to overcome those obstacles and maintain contact. *Id.* at 17-19, 23.

The Orphans' Court found that Child has no bond with Father, as she has not seen him since 2017. Order, 4/8/21, at 10. Indeed, Child was nearly five years old at the time of the termination hearing and had not seen Father for about three-and-a-half years. The court found, therefore, that termination

of Father's parental rights would not have a detrimental impact on Child. **_Id._**
This finding was plainly in accord with our case law.

Our review of the record supports the Orphans' Court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Father's parental rights is in the best interests of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021